IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

BENJALEE WRIGHT,

    Plaintiff,

    v.                                   Civil Action No.
                                              8:15-CV-1175 (DEP)

CAROLYN W. COLVIN, Acting Commissioner
  of Social Security,

    Defendant.

---

APPEARANCES:                 OF COUNSEL:

FOR PLAINTIFF

SCHNEIDER LAW FIRM        MARK A. SCHNEIDER, ESQ.
57 Court Street
Plattsburgh, New York 12901

FOR DEFENDANT

HON. RICHARD S. HARTUNIAN   CATHERINE L. ZURGRUGG, ESQ.
United States Attorney         Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security, pursuant to 42 U.S.C. § 405(g), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on August 30, 2016, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

GRANTED.

2) The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

_____
David E. Peebles
U.S. Magistrate Judge

Dated: September 6, 2016
Syracuse, NY

```
          UNITED STATES  DISTRICT COURT
          NORTHERN DISTRICT OF NEW YORK
          -----------------------------------------------------x
          BENJALEE WRIGHT,


          vs.                                         15-CV-1175

          CAROLYN W. COLVIN, Acting Commissioner of Social Security.
          -----------------------------------------------------x

                    Transcript of DECISION held on August 30, 2016,

          at the James Hanley U.S. Courthouse, 100 South Clinton Street,

          Syracuse, New York, the HONORABLE DAVID E. PEEBLES, Presiding.



                              A P P E A R A N C E S

          For Plaintiff:      MARK A. SCHNEIDER, ESQ.
          (Via Telephone)     57 Court Street
                              Plattsburgh, New York 12901

          For Defendant:      SOCIAL SECURITY ADMINISTRATION
          (Via Telephone)     Office of Regional General Counsel
                              Region II
                              26 Federal Plaza - Room 3904
                              New York, New York 10278
                                BY:  CATHARINE ZURBRUGG, ESQ.
```

1     (In chambers, via telephone:)

2     THE COURT: I have before me a request for judicial review of an adverse determination pursuant to 42, United States Code, Section 405(g).

     The background of this matter is as follows; the plaintiff was born in January of 1962 and is now 54 years old. Was 52 years old at the time of the hearing. He's married and lives with his wife. His children are grown. He has a high school degree and two years of college education.

     He last worked in or about August of 2014 when, as counsel indicated, he attempted for three weeks to work with Mountain Lake Services assisting disabled individuals. He, also, worked in the steel and construction industry from 1998 until April 24 of 2014 in various capacities. He drives.

     He suffers from a chronic lumbar condition. His primary physician is Dr. Zbigniew Wolczynski. He has, also, treated with Dr. Joseph Arguelles, a neurosurgeon who saw him in April of 2014 and October of 2014.

     He has undergone MRI testing on July 31, 2007, February 20, 2014, and May 12, 2015, revealing multilateral degenerative disk disease, lateral and central stenosis and slight progression from the first to the second and the second to the third.

     He also underwent EMG testing by Dr. Honorio Dispo on May 27, 2014, which revealed normal findings and no

1. evidence of radiculopathy or peripheral polyneuropathies.
2. He has been prescribed various medication for pain:
3. Tramadol, Oxycontin, hydrocodone. He has, also, been treated
4. for anxiety -- general anxiety disorder with panic attacks
5. and major depressive disorder and a history of marijuana
6. abuse. He's been prescribed Xanax, among other things.
7. The procedural history is as follows: Plaintiff
8. applied for Title II disability benefits on August 12th,
9. 2014, alleging an onset date of December 11, 2013.
10. A hearing was conducted by Administrative Law Judge
11. Carl E. Stephan January 8th, 2015. ALJ Stephan issued a
12. decision on April 23, 2015, and that became a final
13. determination of the agency on September 18, 2015, when the
14. Social Security Administration Appeals Council denied
15. plaintiff's request for review.
16. In his decision, ALJ Stephan applied the
17. now-familiar five-step sequential test for determining
18. disability.
19. At step one, he determined plaintiff had not
20. engaged in substantial gainful activity since December 11,
21. 2013, although he did note the inconsistencies and vagueness
22. concerning plaintiff's work in 2014.
23. At step two, he determined that the plaintiff
24. suffers from severe impairments, including lumbar spondylosis
25. with radiculopathy, asthma, anxiety and depression. He noted

1   a history of cardiological problems which appear to have been
2   controlled and not interfere with his ability to perform
3   work-related functions.  He, also, rejected hypertension,
4   GERD with Barrett's esophagus, kidney stones and heart
5   disorder as sufficiently severe to meet the requirements of
6   step two.
7            At step three, he concluded that plaintiff's
8   conditions did not individually or collectively meet or equal
9   any of the listed presumptively disabling impairments in the
10  regulations considering the 1.00 listings, musculoskeletal;
11  the 3.00, respiratory; he also considered 12.04, 12.06 and
12  12.08 but concluded that plaintiff could not meet either the
13  B or the C criteria associated with those.
14           He then surveyed the medical evidence and concluded
15  that plaintiff retains the capacity to perform light work
16  with exceptions as follows:  He can occasionally climb stairs
17  and ramps, balance, stoop, kneel, crouch, crawl and operate
18  foot controls but should not climb ladders or scaffolds and
19  no exposure to concentrated respiratory irritants.
20           He is able to understand, remember and carry out
21  simple functions, perform simple work and make judgments on
22  simple work-related decisions.  Under supervision, he can
23  occasionally, understand, remember and carry out more complex
24  instructions, perform more complex tasks and make judgments
25  on more complex work-related decisions.

1    He is capable of interacting with coworkers,
2 supervisors and the public on a frequent but not constant
3 basis and is capable of tolerating frequent changes in the
4 work setting.
5    Applying that RFC determination, the administrative
6 law judge concluded that plaintiff is unable to perform his
7 past relevant work because of its exertional requirements.
8 He determined that, if plaintiff was able to perform a full
9 range of light work under the grids and, particularly, grid
10 Rule 202.14, a finding of no disability would be directed.
11    He concluded, however, that there was a sufficient
12 erosion of the job base on which the grids were predicated,
13 that vocational expert testimony was required and, based on
14 that testimony, concluded that plaintiff could perform the
15 requirements as a parking lot, cashier, hospital TV rental
16 clerk, a laboratory sample carrier and cleaner/housekeeping
17 and, therefore, concluded that that plaintiff was not
18 disabled.
19    As you know, my task is limited.  The scope of
20 review for the Court is deferential.  I must determine if
21 correct legal principals were applied and substantial
22 evidence supports the determination.
23    I reviewed very carefully the records of
24 Dr. Arguelles and Dr. Wolczynski in view of plaintiff's
25 arguments that they were not properly treated -- considered

1  as treating sources.  Clearly, the law and the regulations
2  require that that the opinions of a treating source
3  concerning functional limitations must be deemed controlling
4  and, if they are rejected, the ALJ has to explain the
5  rejection and the weight given to those determinations.
6  I could not find any basis to conclude that either
7  of those two physicians' opinions were rejected when it
8  comes to functional limitations.  In fact, Dr. Wolczynski and
9  Dr. Arguelles' opinions were given weight by the
10 administrative law judge.
11 Dr. Wassef, I understand the arguments about his
12 lack of expertise, perhaps, as an orthopedist or a
13 neurosurgeon.  But it is true that a consultative examination
14 can supply substantial evidence.  The opinions of Dr. Wassef
15 are consistent with the medical evidence and his objective
16 evaluation.  He stated at Page 305, the claimant appeared to
17 be in no acute distress, gait normal.  He did say he was
18 unable to stand and walk on heels and that he cannot squat.
19 He conducted a musculoskeletal exam.  He determined
20 that there was lordosis in the lumbar spine area and diffuse
21 tenderness in the lumbar spine area but there was full
22 flexion, extension, lateral flexion bilaterally and full
23 rotary movement bilaterally in the lumbar spine area.
24 Straight leg raise was negative bilaterally.  And he
25 determined that the claimant has moderate limitations in

1    regard to standing, walking, climbing and descending stairs,
2    bending, squatting, lifting and operating foot controls.
3            No one quarrels with the fact that the plaintiff
4    experiences pain.  He suffers from a condition that could be
5    expected to produce pain but pain alone does not equal
6    disability.
7            I note that Dr. Wolczynski and Dr. Arguelles did
8    not opine specifically regarding functional limitations.
9    Dr. Arguelles did say on April 23, 2014, at Page 253, that he
10   believed that the plaintiff's pain was relieved best by
11   moderate level of activity and that all of his symptoms were
12   worsened by very strenuous activity or maintenance of
13   sedentary activity level.  Dr. Arguelles, all he said with
14   regard to his opinion on October 1, 2014, is that the
15   plaintiff has a difficult time engaging in any kind of
16   strenuous activity -- this is at Page 313 -- and that he is
17   no longer able to do his work in labor and construction
18   because of his back pain.
19           He said, I don't think that it is likely that a
20   surgical procedure would be able to return him to a condition
21   that would allow for heavy labor.  I believe it would be
22   potentially best in his interest to consider seeking
23   long-term disability.  Of course, long-term disability, we're
24   not sure what that context is, but if he's meaning Social
25   Security Disability benefits, of course, that's a matter

1  that's reserved to the Commissioner.

2  Dr. Melcher's opinions were given partial weight
3  but the administrative law judge explained why he did not
4  give full credit to that opinion and rejected the statement
5  that the plaintiff, because of his psychiatric problems,
6  may -- they may significantly interfere with his ability to
7  function on a daily basis.  That's at 300.  And he properly
8  stated that he relied, in part, on Dr. Ferrin's review of the
9  records.

10  When it comes to the RFC, plaintiff's burden to
11  establish the RFC and that burden was not met; in other
12  words, the burden to establish a greater RFC.  The issue of
13  credibility, I think, is key here.  The administrative law
14  judge explained in detail at Pages 29 through 34 of the
15  administrative transcript his reason for not fully crediting
16  plaintiff's pain complaints.

17  He did acknowledge that he suffers from a condition
18  that could reasonably be expected to produce the symptoms as
19  testified, but he relied heavily on daily activities, the
20  reports of plaintiff's daily activities in his reports to the
21  agency and to the two consultative examiners.  He considered
22  his relatively conservative treatment.  He considered the
23  receipt of unemployment and the certification of ability to
24  work; and the fact that he was laid off and it doesn't appear
25  that he was laid off due to his back condition.  So, the

1   credibility determination was properly explained and is
2   supported by substantial evidence.
3           At step five, the hypothetical that was provided to
4   the Social Securitial expert was well-supported and,
5   therefore, the determination of no disability is supported by
6   substantial evidence.
7           So, I will grant judgment on the pleadings to the
8   defendant dismissing plaintiff's complaint.
9           Thank you both for excellent presentations.
10          MS. ZURBRUGG:  Thank you, your Honor.
11          MR. SCHNEIDER:  Goodbye.
12          (Proceedings adjourned.)
13
14
15
16
17
18
19
20
21
22
23
24
25

C E R T I F I C A T I O N

        I, DIANE S. MARTENS, Registered Professional Reporter, DO HEREBY CERTIFY that I attended the foregoing proceedings, took stenographic notes of the same, that the foregoing is a true and correct copy of same and the whole thereof.

*Diane S. Martens*

DIANE S. MARTENS, FCRR